FILED

FEB 21 PM 1:56

[illegible court stamp]
DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3

4

5   CESAR ANCHANTE-MARTINETTI,

6   C/o 324 Stevenson Street,

7   Vacaville, California Zip Code

8   Exempt,

9            Libellant,

10        vs.

11  WORLD SAVINGS, KEN THOMPSON,

12  C/o 1999 Harrison Street, Suite 2400

13  Oakland, California [94612]

14            Libellee,

|  |
|---|
| ) Case No.: No. C 07-05929 SI |
| ) |
| ) **ANSWER TO DEFENDANTS'MOTION TO DISMISS** |
| ) |
| ) [Ev. Rule 201 for ministerial use only] |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |

15                    JUDICIAL NOTICE

16     Now, by special appearance, comes Cesar: Anchante-Martinetti, Sui

17  Juris,third party intervener, the flesh and blood man, unschooled in law'

18  hereinafter referred to as me, my, I or the like, to make the following

19  AFFIDAVIT with clean hands, full disclosure and no intent to defraud. The

20  following first hand asseverations are true, complete, certain and not meant

21  to mislead or delay.

22     1.)     WORLD SAVING'S PRESENTMENT fails to aver any first hand knowledge

23        of the facts therein.

24     2.)     Averments of an attorney are not first hand evidence and serve as

25        hearsay testimony which is not admissible.

       3.)     I have perfected an administrative COUNTERCLAIM procedure to

JUDICIAL NOTICE - 1 OF 3

1  exhaust my administrative remedies in this instant matter, see

2  Notary Protest.

3  4.)     An examination of the Notary Protest will serve to establish that

4  WORLD SAVINGS by and through KEN THOMPSON have agreed to be bound to the

5  enclosed SETOFF AND ADJUSTMENT attained through the binding arbitration

   process of a Notary Protest, see Notary Protest.

6  5.) Upon the direction of the clerk, I filed the amendment on the 11th. She

7  would not take it on the 8th because I had not followed the Local Rules.

8                          OVERVIEW OF FACTS

9  6.)On August 29, 2007 Libellees sent a presentment to me demanding payment
   of a sum certain.

10 7.)I conditionally accepted that presentment upon WORLD SAVINGS'
   continuing fiduciary duty to deal honestly and answer questions about the
11 underlying obligation.

12 8.)     The RECORD shows that WORLD SAVINGS refused and/or failed to

13 provide the requested proof of claim, such as.

14       a.  Provide the original note, both back and front, upon which the
             purported obligation arises,
15       b.  Provide evidence in the form of your book keeping entries that
             show where the "funds" originated.

16 9.)     I am unschooled in law and if the terms I have used are confusing

17 I apologize and will be honored to clarify any specific definition, in

18 doubt, to settle and close this matter in harmony with the post bankruptcy

19 public policy of the UNITED STATES inc.

20 10.)    WORLD SAVINGS has at no time, indicated any confusion with my

   correspondence.

21 11.)    WORLD SAVINGS has remained silent.

22 12.)    WORLD SAVINGS had ample opportunity to ask for a more definitive

23   statement.

24 13.)    The RECORD shows that no such request for a more definitive

25   statement was executed.

14.)      Federal Rules of Civil Procedure provide for default judgment by the clerk for a failure to appear and defend.

15.)      KEN THOMPSON has a fiduciary duty to give an accounting as does every other JOHN DOE named as defendants.

16.)      As agent for WORLD SAVINGS his acknowledgement that he received the summons cures any defect in process.

17.)      The Protest evidences WORLD SAVINGS' agreement, consent and stipulation to my position.

18.)      A declaratory judgment establishing WORLD SAVINGS' default is appropriate.

In conclusion, I have been the victim of dishonorable predatory lending. I have not received an honest answer from anyone in this matter. My recourse to the "judiciary" is in an effort to resolve this matter in an honest and open forum. Now KEITH D. YANDELL (00233146) esquire is attempting to get me and this court to believe that after presumably graduating from law school he is unable to look up confusing legal terms, in a law dictionary. For any "judicial" officer to add confusion to an already intricate subject as this by claiming to be incompetent to read because of some self imposed deficiency in his ability to comprehend it is just one more substantial piece of evidence that establishes that almost the entire bank/court system is run by a cabal of ego inflated people who have, in their own minds, elevated themselves to an un-sustainable position of defacto rule based on deceit and programmed ignorance.

My yea is my yea and my nay is my nay.

Dated this 20th day of February, 2008

By authorized representative
Without recourse

JUDICIAL NOTICE - 3 OF 3

1                           UNITED STATES DISTRICT COURT

2                       NORTHERN DISTRICT OF CALIFORNIA

3

4

|  |  |
|---|---|
| 5   CESAR ANCHANTE-MARTINETTI, | ) Case No.: No. C 07-05929 SI |
| 6   C/o 324 Stevenson Street, | ) **NOTICE OF ACCEPTANCE OF OATH OF** |
| 7   Vacaville, California Zip Code | ) **OFFICE AND BOND** |
| 8   Exempt, | ) |
| 9           Libellant, | ) |
| 10      vs. | ) |
| 11   WORLD SAVINGS, KEN THOMPSON, | ) |
| 12   C/o 1999 Harrison Street, Suite 2400 | ) |
| 13   Oakland, California [94612] | ) |
| 14        Libellee, | ) |

15       **NOTICE OF ACCEPTANCE OF OATHS OF OFFICE AND BONDS**

16 Notice to the agent is notice to the principal, notice to the principal is

17 notice to the agent.

18 Re: NOTICE OF ACCEPTANCE OF OATH OF OFFICE AND BOND

19    Now, by special appearance, comes Cesar: Anchante-Martinetti, the flesh

20 and blood man, Sui Juris and unschooled in law, hereinafter referred to as

21 me, my, I, or the like, to make the following NOTICE with clean hands, full

22 disclosure and no intent to defraud, furthermore, the following first hand

23 asseverations are true, complete, certain and not meant to mislead

24 Additionally this presentment is not put forth for purposes of delay nor to

25 request any B.A.R. member attorned esquire, or agents thereof, to make any

1  determinations for me, legal or otherwise, including but not limited to any

2  so called "overturning of a motion". This is not a motion. This is a NOTICE.

3  If you are reading this then the presumption will operate that you have

4  ACTUAL NOTICE of the subject matter herein and by acting contrary to this

5  NOTICE you will be bound by its terms. Fail not under penalty of Law!

6  NOTICE is hereby given that:

7
   1.)    I am of legal age, competent to testify and under no legal
8          disability.

9  2.)    As the creditor and principal, I hereby formally accept the Oaths

10     of Office and Bonds of SUSAN ILLSTON esquire and KEITH D. YANDELL

11     (00233146) esquire forming a contract in the common law.

12
                                Dated this 20th day of February, 2008
13
                                _Cesar Qualoate Mattinetti_
14                                  By: authorized representative
                                       Without recourse
15

16

17

18

19

20

21

22

23

24

25

1                          UNITED STATES DISTRICT COURT

2                         NORTHERN DISTRICT OF CALIFORNIA

3

4
                                              ) Case No.: No. C 07-05929 SI
5    CESAR ANCHANTE-MARTINETTI,               )
                                              ) ORDER
6     C/o 324 Stevenson Street,               )
                                              )
7    Vacaville, California Zip Code           )
                                              )
8    Exempt,                                  )
                                              )
9              Libellant,                     )
                                              )
10        vs.                                 )
                                              )
11   WORLD SAVINGS, KEN THOMPSON,             )
                                              )
12   C/o 1999 Harrison Street, Suite 2400     )
                                              )
13   Oakland, California [94612]              )
                                              )
14              Libellee,                     )

15                                      ORDER

16   This matter came on to be heard on March 28, 2008. After consideration and

17   for good cause shown it is hereby ORDERED, ADJUDGED AND DECREED that

18   libellant is entitled to judgment and it is hereby ordered that all liens on

19   the subject property are to be removed and furthermore libelees are ordered

20   to pay libellant $33,878,075.64 (Thirty-three million, Eight hundred-seventy-

21   eight thousand and seventy five with 64/100 dollars).

22

23                                      Cesar Anchante Martinetti

24

25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR ANCHANTE-MARTINETTI | ) Case No.: No. C 07-05929 SI<br>)<br>) CERTIFICATE OF SERVICE |
| C/o KEN THOMPSON | ) |
| 6787 Hillsview Dr | ) |
| Vacaville, California Zip Code Exempt | ) |
| Libellant, | ) |
| vs. | ) |
| WORLD SAVINGS, KEN THOMPSON, | ) |
| C/o 1999 Harrison Street, Suite 2400 | ) |
| Oakland, California, | ) |
| Libellees | ) |

Now, by special appearance, comes Cesar: Anchante-Martinetti, the flesh and blood man, Sui Juris and unschooled in law, hereinafter referred to as me, my, I or the like, to make the following AFFIDAVIT with clean hands, full disclosure and no intent to defraud, furthermore, the following first hand asseverations are true, complete, certain and not meant to mislead or delay.

1.)    I am of legal age, competent to testify and under no legal disability.

2.)    On February 20th, 2008 I caused the enclosed ANSWER to be sent to WORLD SAVINGS AND KEN THOMPSON, by and through JACK R. NELSON 00111863, esquire and KEITH D. YANDELL 00233146, esquire by placing the same in a postage pre-paid envelope addressed as follows;

WORLD SAVINGS by and through
JACK R NELSON 00111863, esquire and
KEITH D. YANDELL 00233146, esquire
C/o 1999 Harrison Street, Suite 2400
Oakland, California [94612]

By certified mail # 7006 0100 0005 6175 7452  and depositing it with
the U. S. Postal Service

My yea is my yea and my nay is my nay.

Dated this 20th day of February,
2008

*cesar Quebasuto. Most rath*

By: authorized representative
Without recourse

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE FORECLOSURE CASES** | ) | **CASE NO. NO.1:07CV2282** |
| | ) | **07CV2532** |
| | ) | **07CV2560** |
| | ) | **07CV2602** |
| | ) | **07CV2631** |
| | ) | **07CV2638** |
| | ) | **07CV2681** |
| | ) | **07CV2695** |
| | ) | **07CV2920** |
| | ) | **07CV2930** |
| | ) | **07CV2949** |
| | ) | **07CV2950** |
| | ) | **07CV3000** |
| | ) | **07CV3029** |
| | ) | |
| | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| | ) | |
| | ) | |
| | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J.**:

On October 10, 2007, this Court issued an Order requiring Plaintiff-Lenders in a number of pending foreclosure cases to file a copy of the executed Assignment demonstrating Plaintiff was the holder and owner of the Note and Mortgage ***as of the date the Complaint was filed***, or the Court would enter a dismissal. After considering the submissions, along with all the documents filed of record, the Court dismisses the captioned cases without prejudice. The Court has reached today's determination after a thorough review of all the relevant law and the briefs and arguments recently presented by the parties, including oral

arguments heard on Plaintiff Deutsche Bank's Motion for Reconsideration. The decision, therefore, is applicable from this date forward, and shall not have retroactive effect.

## LAW AND ANALYSIS

A party seeking to bring a case into federal court on grounds of diversity carries the burden of establishing diversity jurisdiction. *Coyne v. American Tobacco Company*, 183 F. 3d 488 (6th Cir. 1999). Further, the plaintiff "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne*, 183 F. 3d at 494; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). The minimum constitutional requirements for standing are: proof of injury in fact, causation, and redressability. *Valley Forge*, 454 U.S. at 472. In addition, "the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Coyne*, 183 F. 3d at 494 (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F. 2d 573, 576 (6th Cir. 1991)). To satisfy the requirements of Article III of the United States Constitution, the plaintiff must show he has ***personally suffered some actual injury*** as a result of the illegal conduct of the defendant. (Emphasis added). *Coyne*, 183 F. 3d at 494; *Valley Forge*, 454 U.S. at 472.

In each of the above-captioned Complaints, the named Plaintiff alleges it is the holder and owner of the Note and Mortgage. However, the attached Note and Mortgage identify the mortgagee and promisee as the original lending institution — one other than the named Plaintiff. Further, the Preliminary Judicial Report attached as an exhibit to the Complaint makes no reference to the named Plaintiff in the recorded chain of title/interest. The Court's Amended General Order No. 2006-16 requires Plaintiff to submit an affidavit along with the Complaint, which identifies Plaintiff either as the original mortgage holder, or as an assignee,

-2-

trustee or successor-in-interest. Once again, the affidavits submitted in all these cases recite the averment that Plaintiff is the owner of the Note and Mortgage, without any mention of an assignment or trust or successor interest. Consequently, the very filings and submissions of the Plaintiff create a conflict. In every instance, then, Plaintiff has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint.

Understandably, the Court requested clarification by requiring each Plaintiff to submit a copy of the Assignment of the Note and Mortgage, executed as of the date of the Foreclosure Complaint. In the above-captioned cases, *none* of the Assignments show the named Plaintiff to be the owner of the rights, title and interest under the Mortgage at issue as of the date of the Foreclosure Complaint. The Assignments, in every instance, express a present intent to convey all rights, title and interest in the Mortgage and the accompanying Note to the Plaintiff named in the caption of the Foreclosure Complaint upon receipt of sufficient consideration on the date the Assignment was signed and notarized. Further, the Assignment documents are all prepared by counsel for the named Plaintiffs. These proffered documents belie Plaintiffs' assertion they own the Note and Mortgage by means of a purchase which pre-dated the Complaint by days, months or years.

Plaintiff-Lenders shall take note, furthermore, that prior to the issuance of its October 10, 2007 Order, the Court considered the principles of "real party in interest," and examined Fed. R. Civ. P. 17 — "Parties Plaintiff and Defendant; Capacity" and its associated Commentary. The Rule is not *apropos* to the situation raised by these Foreclosure Complaints. The Rule's Commentary offers this explanation: "The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the

-3-

proper party to sue is difficult or when an understandable mistake has been made. ... It is, in cases of this sort, intended to insure against forfeiture and injustice ..." Plaintiff-Lenders do not allege mistake or that a party cannot be identified. Nor will Plaintiff-Lenders suffer forfeiture or injustice by the dismissal of these defective complaints otherwise than on the merits.

Moreover, this Court is obligated to carefully scrutinize all filings and pleadings in foreclosure actions, since the unique nature of real property requires contracts and transactions concerning real property to be in writing. R.C. § 1335.04. Ohio law holds that when a mortgage is assigned, moreover, the assignment is subject to the recording requirements of R.C. § 5301.25. *Creager v. Anderson* (1934), 16 Ohio Law Abs. 400 (interpreting the former statute, G.C. § 8543). "Thus, with regards to real property, before an entity assigned an interest in that property would be entitled to receive a distribution from the sale of the property, their interest therein must have been recorded in accordance with Ohio law." *In re Ochmanek*, 266 B.R. 114, 120 (Bkrtcy.N.D. Ohio 2000) (citing *Pinney v. Merchants' National Bank of Defiance*, 71 Ohio St. 173, 177 (1904).[1]

This Court acknowledges the right of banks, holding valid mortgages, to receive timely payments. And, if they do not receive timely payments, banks have the right to properly file actions on the defaulted notes — seeking foreclosure on the property securing the notes. Yet, this Court possesses the independent obligations to preserve the judicial integrity of the federal court and to jealously guard federal jurisdiction. Neither the fluidity of

---

[1] Astoundingly, counsel at oral argument stated that his client, the purchaser from the original mortgagee, acquired complete legal and equitable interest in land when money changed hands, even before the purchase agreement, let alone a proper assignment, made its way into his client's possession.

-4-

the secondary mortgage market, nor monetary or economic considerations of the parties, nor the convenience of the litigants supersede those obligations.

Despite Plaintiffs' counsel's belief that "there appears to be some level of disagreement and/or misunderstanding amongst professionals, borrowers, attorneys and members of the judiciary," the Court does not require instruction and is not operating under any misapprehension. The "real party in interest" rule, to which the Plaintiff-Lenders continually refer in their responses or motions, is clearly comprehended by the Court and is not intended to assist banks in avoiding traditional federal diversity requirements.[2] Unlike Ohio State law and procedure, as Plaintiffs perceive it, the federal judicial system need not, and will not, be "forgiving in this regard."[3]

---

[2]

Plaintiff's reliance on Ohio's "real party in interest rule" (ORCP 17) and on any Ohio case citations is misplaced. Although Ohio law guides federal courts on substantive issues, state procedural law cannot be used to explain, modify or contradict a federal rule of procedure, which purpose is clearly spelled out in the Commentary. "In federal diversity actions, state law governs substantive issues and federal law governs procedural issues." *Erie R.R. Co. v. Tompkins*, 304 U.S. 63 (1938); *Legg v. Chopra*, 286 F. 3d 286, 289 (6th Cir. 2002); *Gafford v. General Electric Company*, 997 F. 2d 150, 165-6 (6th Cir. 1993).

[3]

Plaintiff's, "Judge, you just don't understand how things work," argument reveals a condescending mindset and quasi-monopolistic system where financial institutions have traditionally controlled, and still control, the foreclosure process. Typically, the homeowner who finds himself/herself in financial straits, fails to make the required mortgage payments and faces a foreclosure suit, is not interested in testing state or federal jurisdictional requirements, either *pro se* or through counsel. Their focus is either, "how do I save my home," or "if I have to give it up, I'll simply leave and find somewhere else to live."

    In the meantime, the financial institutions or successors/assignees rush to foreclose, obtain a default judgment and then sit on the deed, avoiding responsibility for maintaining the property while reaping the financial benefits of interest running on a judgment. The financial institutions know the law charges the one with title (still the homeowner) with maintaining the property.

    There is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. There is nothing improper or wrong with financial institutions or law firms making a profit — to the contrary , they should be rewarded for sound business and legal practices. However, unchallenged by underfinanced opponents, the institutions worry less about jurisdictional requirements and more about maximizing returns. Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through. Counsel for the institutions are not without legal argument to support their position, but their arguments fall woefully short of justifying their premature filings, and utterly fail to satisfy their standing

## CONCLUSION

For all the foregoing reasons, the above-captioned Foreclosure Complaints are

dismissed without prejudice.

**IT IS SO ORDERED.**

**DATE: October 31, 2007**

        **S/Christopher A. Boyko**
        **CHRISTOPHER A. BOYKO**
        **United States District Judge**

---

and jurisdictional burdens. The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate.

The Court will illustrate in simple terms its decision: "Fluidity of the market" — "X" dollars, "contractual arrangements between institutions and counsel" — "X" dollars, "purchasing mortgages in bulk and securitizing" — "X" dollars, "rush to file, slow to record after judgment" — "X" dollars, "the jurisdictional integrity of United States District Court" — "Priceless."

# MassNews.com



**LIBEL**
by New York Times

**Get your Copy
Today
Click Here**

American Legal System Is Corrupt Beyond Recognition, Judge Tells Harvard Law School

### By Geraldine Hawkins
### March 7, 2003

The American legal system has been corrupted almost beyond recognition, Judge Edith Jones of the U.S. Court of Appeals for the Fifth Circuit, told the Federalist Society of Harvard Law School on February 28.

She said that the question of what is morally right is routinely sacrificed to what is politically expedient. The change has come because legal philosophy has descended to nihilism.



Judge Edith H. Jones of the U.S. Court of Appeals for the Fifth Circuit talks to members of Harvard Law School's Fed-eralist Society. Jones said that the question of what is mor-ally right is routinely sacrificed to what is politically expedient.

"The integrity of law, its religious roots, its transcendent quality are disappearing. I saw the movie 'Chicago' with Richard Gere the other day. That's the way the public thinks about lawyers," she told the students.

"The first 100 years of American lawyers were trained on Blackstone, who wrote that: 'The law of nature . dictated by God himself . is binding . in all counties and at all times; no human laws are of any validity if contrary to this; and such of them as are valid derive all force and all their authority . from this original.' The Framers created a government of limited power with this understanding of the rule of law - that it was dependent on transcendent religious obligation," said Jones.

She said that the business about all of the Founding Fathers being deists is "just wrong," or "way overblown." She says they believed in "faith and reason," and this did not lead to intolerance.

"This is not a prescription for intolerance or narrow sectarianism," she continued, "for unalienable rights were given by God to all our fellow citizens. Having lost sight of the moral and religious foundations of the rule of law, we are vulnerable to the destruction of our freedom, our equality before the law and our self-respect. It is my fervent hope that this new century will experience a revival of the original understanding of the rule of law and its roots.

"The answer is a recovery of moral principle, the sine qua non of an orderly society. Post 9/11, many events have been clarified. It is hard to remain a moral relativist when your own people are being killed."

According to the judge, the first contemporary threat to the rule of law comes from

within the legal system itself.

Alexis de Tocqueville, author of Democracy in America and one of the first writers to observe the United States from the outside looking-in, "described lawyers as a natural aristocracy in America," Jones told the students. "The intellectual basis of their profession and the study of law based on venerable precedents bred in them habits of order and a taste for formalities and predictability." As Tocqueville saw it, "These qualities enabled attorneys to stand apart from the passions of the majority. Lawyers were respected by the citizens and able to guide them and moderate the public's whims. Lawyers were essential to tempering the potential tyranny of the majority.

"Some lawyers may still perceive our profession in this flattering light, but to judge from polls and the tenor of lawyer jokes, I doubt the public shares Tocqueville's view anymore, and it is hard for us to do so.

"The legal aristocracy have shed their professional independence for the temptations and materialism associated with becoming businessmen. Because law has become a self-avowed business, pressure mounts to give clients the advice they want to hear, to pander to the clients' goal through deft manipulation of the law. . While the business mentality produces certain benefits, like occasional competition to charge clients lower fees, other adverse effects include advertising and shameless self-promotion. The legal system has also been wounded by lawyers who themselves no longer respect the rule of law,"

The judge quoted Kenneth Starr as saying, "It is decidedly unchristian to win at any cost," and added that most lawyers agree with him.

However, "An increasingly visible and vocal number apparently believe that the strategic use of anger and incivility will achieve their aims. Others seem uninhibited about making misstatements to the court or their opponents or destroying or falsifying evidence," she claimed. "When lawyers cannot be trusted to observe the fair processes essential to maintaining the rule of law, how can we expect the public to respect the process?"

Lawsuits Do Not Bring 'Social Justice'

Another pernicious development within the legal system is the misuse of lawsuits, according to her.

"We see lawsuits wielded as weapons of revenge," she says. "Lawsuits are brought that ultimately line the pockets of lawyers rather than their clients. . The lawsuit is not the best way to achieve social justice, and to think it is, is a seriously flawed hypothesis. There are better ways to achieve social goals than by going into court."

Jones said that employment litigation is a particularly fertile field for this kind of abuse.

"Seldom are employment discrimination suits in our court supported by direct evidence of race or sex-based animosity. Instead, the courts are asked to revisit petty interoffice disputes and to infer invidious motives from trivial comments or work-performance criticism. Recrimination, second-guessing and suspicion plague the workplace when tenuous discrimination suits are filed . creating an atmosphere in which many corporate defendants are forced into costly settlements because they simply cannot afford to vindicate their positions.

"While the historical purpose of the common law was to compensate for individual injuries, this new litigation instead purports to achieve redistributive social justice.

Scratch the surface of the attorneys' self-serving press releases, however, and one finds how enormously profitable social redistribution is for those lawyers who call themselves 'agents of change.'"

Jones wonders, "What social goal is achieved by transferring millions of dollars to the lawyers, while their clients obtain coupons or token rebates."

The judge quoted George Washington who asked in his Farewell Address, "Where is the security for property, for reputation, for life, if the sense of religious obligation desert the oaths . in courts of justice?"

Similarly, asked Jones, how can a system founded on law survive if the administrators of the law daily display their contempt for it?

"Lawyers' private morality has definite public consequences," she said. "Their misbehavior feeds on itself, encouraging disrespect and debasement of the rule of law as the public become encouraged to press their own advantage in a system they perceive as manipulatable."

The second threat to the rule of law comes from government, which is encumbered with agencies that have made the law so complicated that it is difficult to decipher and often contradicts itself.

"Agencies have an inherent tendency to expand their mandate," says Jones. "At the same time, their decision-making often becomes parochial and short-sighted. They may be captured by the entities that are ostensibly being regulated, or they may pursue agency self-interest at the expense of the public welfare. Citizens left at the mercy of selective and unpredictable agency action have little recourse."

Jones recommends three books by Philip Howard: The Death of Common Sense, The Collapse of the Common Good and The Lost Art of Drawing the Line, which further delineate this problem.

The third and most comprehensive threat to the rule of law arises from contemporary legal philosophy.

"Throughout my professional life, American legal education has been ruled by theories like positivism, the residue of legal realism, critical legal studies, post-modernism and other philosophical fashions," said Jones. "Each of these theories has a lot to say about the 'is' of law, but none of them addresses the 'ought,' the moral foundation or direction of law."

Jones quoted Roger C. Cramton, a law professor at Cornell University, who wrote in the 1970s that "the ordinary religion of the law school classroom" is "a moral relativism tending toward nihilism, a pragmatism tending toward an amoral instrumentalism, a realism tending toward cynicism, an individualism tending toward atomism, and a faith in reason and democratic processes tending toward mere credulity and idolatry."

No 'Great Awakening' In Law School Classrooms

The judge said ruefully, "There has been no Great Awakening in the law school classroom since those words were written." She maintained that now it is even worse because faith and democratic processes are breaking down.

"The problem with legal philosophy today is that it reflects all too well the broader post-Enlightenment problem of philosophy," Jones said. She quoted Ernest Fortin, who wrote in Crisis magazine: "The whole of modern thought . has been a series of heroic attempts to reconstruct a world of human meaning and value on the basis of . our purely mechanistic understanding of the universe."

Jones said that all of these threats to the rule of law have a common thread running through them, and she quoted Professor Harold Berman to identify it: "The traditional Western beliefs in the structural integrity of law, its ongoingness, its religious roots, its transcendent qualities, are disappearing not only from the minds of law teachers and law students but also from the consciousness of the vast majority of citizens, the people as a whole; and more than that, they are disappearing from the law itself. The law itself is becoming more fragmented, more subjective, geared more to expediency and less to morality. . The historical soil of the Western legal tradition is being washed away . and the tradition itself is threatened with collapse."

Judge Jones concluded with another thought from George Washington: "Of all the dispositions and habits which lead to prosperity, religion and morality are indispensable supports. In vain would that man claim the tribute of patriotism who should labor to subvert these great pillars of human happiness - these firmest props of the duties of men and citizens."

Upon taking questions from students, Judge Jones recommended Michael Novak's book, On Two Wings: Humble Faith and Common Sense.

"Natural law is not a prescriptive way to solve problems," Jones said. "It is a way to look at life starting with the Ten Commandments."

Natural law provides "a framework for government that permits human freedom," Jones said. "If you take that away, what are you left with? Bodily senses? The will of the majority? The communist view? What is it - 'from each according to his ability, to each according to his need?' I don't even remember it, thank the Lord," she said to the amusement of the students.

"I am an unabashed patriot - I think the United States is the healthiest society in the world at this point in time," Jones said, although she did concede that there were other ways to accommodate the rule of law, such as constitutional monarchy.

"Our legal system is way out of kilter," she said. "The tort litigating system is wreaking havoc. Look at any trials that have been conducted on TV. These lawyers are willing to say anything."

Potential Nominee to Supreme Court

Judge Edith Jones has been mentioned as a potential nominee to the Supreme Court in the Bush administration, but does not relish the idea.

"Have you looked at what people have to go through who are nominated for federal appointments? They have to answer questions like, 'Did you pay your nanny taxes?' 'Is your yard man illegal?'

"In those circumstances, who is going to go out to be a federal judge?"

Judge Edith H. Jones has a B.A. from Cornell University and a J.D. from the University of

Texas School of Law. She was appointed to the Fifth Circuit by President Ronald Reagan in 1985. Her office is in the U.S. Courthouse in Houston.

The Federalist Society was founded in 1982 when a group of law students from Harvard, Stanford, the University of Chicago and Yale organized a symposium on federalism at Yale Law School. These students were unhappy with the academic climate on their campuses for some of the reasons outlined by Judge Jones. The Federalist Society was created to be a forum for a wider range of legal viewpoints than they were hearing in the course of their studies.

From the four schools mentioned above, the Society has grown to include over 150 law school chapters. The Harvard chapter, with over 250 members, is one of the nation's largest and most active. They seek to contribute to civilized dialogue at the Law School by providing a libertarian and conservative voice on campus and by sponsoring speeches and debates on a wide range of legal and policy issues.

The Federalist Society consists of libertarians and conservatives interested in the current state of the legal profession. It is founded on three principles: 1) the state exists to preserve freedom, 2) the separation of governmental powers is central to our Constitution and 3) it is emphatically the province and duty of the judiciary to state what the law is, not what it should be.

New Attorneys and Law Students

## With the Bench Cozied Up To The Bar, The Lawyers Can't Lose

**By Adam Liptak**
**The New York Times**
Sept. 2007



Dennis G. Jacobs, the chief judge of the federal appeals court in New York, is a candid man, and in a speech last year he admitted that he and his colleagues had "a serious and secret bias." Perhaps unthinkingly but quite consistently, he said, judges can be counted on to rule in favor of anything that protects and empowers lawyers.

Once you start thinking about it, the examples are everywhere. The lawyer-client privilege is more closely guarded than any other. It is easier to sue for medical malpractice than for legal malpractice. People who try to make a living helping people fill out straightforward forms are punished for the unauthorized practice of law.

But Judge Jacobs's main point is a deeper one. Judges favor complexity and legalism over efficient solutions, and they have no appreciation for what economists call transaction costs. They are aided in this by lawyers who bill by the hour and like nothing more than tasks that take a lot of time and cost their clients a lot of money.

And there is, of course, the pleasure of power, particularly in cases involving the great issues of the day.

"Judges love these kinds of cases," said Judge Jacobs, whose speech was published in The Fordham Law Review in May. "Public interest cases afford a judge more sway over public policy, enhance the judicial role, make judges more conspicuous and keep the law clerks happy."

There are costs here, too, he said, including "the displacement of legislative and executive power" and "the subordination of other disciplines and professions."

Yet, at the conclusion of a big public-policy case, the bar and bench rejoice. "We smugly congratulate ourselves," Judge Jacobs said, "on expanding what we are pleased to call the rule of law."

Benjamin H. Barton, a law professor at the University of Tennessee, examined some of the same issues in an article to be published next year in The Alabama Law Review titled "Do Judges Systematically Favor the Interests of the Legal Profession?"

That question mark notwithstanding, there is little doubt about where Professor Barton comes out.

He noted, for instance, that the legal profession is the only one that is completely self-regulated. "As a general rule," Professor Barton wrote, "foxes make poor custodians of henhouses."

Professor Barton explored a long list of examples, including the aftermath of the Supreme Court's 1966 decision in Miranda v. Arizona. Miranda, as everyone with a television set knows, protected the right to remain silent and the right to a lawyer.

Over the years, though, courts have approved all sorts of police strategies that have eroded the right to remain silent. At the same time, Professor Barton wrote, the courts "chose to retain quite robust protections for accused who clearly expressed a desire for a lawyer."

"The advantages to the legal profession are clear," he added. "Whatever else an accused should know, she should know to request a lawyer first and foremost."

And the cases keep coming.

This month, a New Jersey appeals court basically immunized lawyers from malicious prosecution suits in civil cases. Even lawyers who know their clients are pushing baseless claims solely to harass the other side are in the clear, the court said, unless the lawyers themselves have an improper motive.

Lester Brickman, who teaches legal ethics at Cardozo Law School, said the decision was just one instance of a broad phenomenon.

"The New Jersey courts have determined to protect the legal profession in a way that no other professions enjoy," Professor Brickman said. "It's regulation by lawyers for lawyers."

Other professions look for elegant solutions. It is the rare engineer, software designer or plumber who chooses an elaborate fix when a simple one will do. The legal system, by contrast, insists on years of discovery, motion practice, hearings, trials and appeals that culminate in obscure rulings providing no guidance to the next litigant.

Last month, Judge Jacobs put his views into practice, dissenting from a decision in a tangled lawsuit about something a college newspaper published in 1997. The judges in the majority said important First Amendment principles were at stake, though they acknowledged that the case involved, at most, trivial sums of money.

Judge Jacobs's dissent started with an unusual and not especially collegial disclaimer. He said he would not engage the arguments in the majority decision because "I have not read it."

He was, he said, incredulous that "after years of litigation over $2, the majority will impose on a busy judge to conduct a trial on this silly thing, and require a panel of jurors to set aside their more important duties of family and business in order to

decide it."

Writing with the kind of verve and sense of proportion entirely absent in most legal work, Judge Jacobs concluded that "this is not a case that should occupy the mind of a person who has anything consequential to do."

Copyright 2007 The New York Times Company